# Exhibit A

**Supporting Statement for Paperwork Reduction Act**
**Generic Information Collection Submissions for**
**"Generic Clearance for the Collection of Social Media Information on Immigration and**
**Foreign Travel Forms"**
**Office of Management and Budget Control No. 1601-NEW**

## A. JUSTIFICATION

### 1. Circumstances Making the Collection of Information Necessary

Executive Order (EO) 13780, "*Protecting the Nation from Foreign Terrorist Entry into the United States"* directs the implementation of a uniform baseline of screening and vetting standards and procedures, which requires the proper collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility or bases for the denial of other immigration benefits.  *See* 82 FR 13209 (Mar. 6, 2017).  In a review of information collected for admission and benefit decisions, the Department of Homeland Security (DHS) identified the need to collect social media identifiers ("handles") and their associated social media platforms from applicants to enable and inform identity verification, national security screening and vetting, and related inspections.[1]

Consistent with the requirement for a uniform baseline of vetting standards described in EO 13780, DHS intends to collect standard data from applicants on immigration and foreign traveler forms and information collection systems.  This data will be collected on certain applications and petitions for admission into the United States and certain other immigration-related benefits.[2]

This collection of information is necessary to enable DHS to assess an alien's eligibility to travel to or be admitted to the United States or to receive an immigration-related benefit from DHS.  DHS currently uses publicly available social media information to support its vetting and adjudication programs, and to supplement other information and tools that DHS trained personnel regularly use in the performance of their duties.[3]  This process includes a labor-

---

[1] Vetting, for purposes of immigration enforcement and border security, involves the review and evaluation of information associated to an individual to validate identity, identify potential threats, and identify issues related to fraud, misrepresentation, national security, border security, homeland security, public safety, or law enforcement interests of the United States.

[2] The applicable DHS applications and petitions are described in this supporting statement in sections 1 and 2.  For economy of words in this supporting statement, DHS may use the terms "application," "benefit request," "form," "immigration benefit request," and "petition" interchangeably although the form or request may or may not be to apply or petition for an immigration benefit.

[3] Publicly available social media means the sphere of websites, applications, and web-based tools that connect users to engage in dialogue, share information and media, collaborate, and interact and that has been published or broadcast in some manner to the general public, could lawfully be seen or heard by a casual observer, is made available at a meeting open to the public, or is obtained by visiting any place or attending any event that is open to the public.  Publicly available social media may be available to the public by subscription or purchase, but does not require an invitation from a user to join or the establishment of a relationship (e.g., "friend," "follow," "connect") to otherwise access information.  Publicly available social media may require a user to create an account in order to

intensive step to validate that the identified social media is correctly associated with the applicant. The collection of applicants' social media identifiers and associated platforms will also assist DHS by providing DHS adjudication personnel with more timely visibility of the publicly available information[4] on the platforms provided by the applicant.

Social media may help distinguish individuals of concern from applicants whose information substantiates their eligibility for travel or an immigration benefit. Social media can provide positive, confirmatory information, or support a beneficiary's or traveler's application, petition, or claims. It can also be used to identify potential deception, fraud, or previously unidentified national security or law enforcement concerns, such as when criminals and terrorists have provided otherwise unavailable information via social media that identified their true intentions, including support for terrorist organizations.

DHS will collect social media user identifications (also known as usernames, identifiers, or "handles") and associated social media platforms used by an applicant during the past five years through certain immigration and foreign traveler collection instruments and for DHS systems identified in this supporting statement.[5] These platforms were identified in consultation with U.S. Government vetting partners and will evolve as new social media platforms are created.[6] DHS is seeking this information, covering the previous five year period, to add supporting information and consistency with other U.S. Government data collections for immigrant and nonimmigrant visas. DHS will not collect social media passwords. DHS personnel will review information on social media platforms in a manner consistent with the privacy settings the applicant has chosen to adopt for those platforms. Only that information which the account holder has allowed to be shared publicly will be viewable by DHS.

DHS is committed to upholding the highest standards of conduct throughout the Department. Existing DHS policy prohibits the consideration of race or ethnicity in our investigation, screening, and enforcement activities in all but the most exceptional instances. This policy is reaffirmed in manuals, policies, directives, and guidelines.

CBP is committed to the fair, impartial, and respectful treatment of all members of the trade and traveling public, and has memorialized its commitment to nondiscrimination in existing policies, including the February 2014 CBP Policy on Nondiscrimination in Law Enforcement Activities and all other Administered Programs. This policy prohibits the consideration of race or ethnicity in law enforcement, investigation, and screening activities, in all but the most exceptional circumstances.

---

access services and related content. Social media take many forms, including but not limited to web-based communities and hosted services, social networking sites, video and photo sharing technologies.

[4] Publicly available information is unclassified information that has been published or broadcasted in some manner to the general public, may be available to the public by subscription or purchase, could lawfully be seen or heard by a casual observer, is made available at a meeting open to the public, or is obtained by visiting any place or attending any event that is open to the public.

[5] For the purposes of this supporting statement and the associated DHS forms, "user identifications" are defined as usernames, handles, screen names, or other identifiers associated with an individual's online presence and social media profile. Passwords are not considered user identifications and will not be collected.

[6] DHS may update the list of social media platforms by adding or removing platforms; therefore, the list will change over time.

CBP's Standards of Conduct further highlights CBP's prohibition on bias-motivated conduct and explicitly requires that "Employees will not act or fail to act on an official matter in a manner which improperly takes into consideration an individual's race, color, age, sexual orientation, religion, sex, national origin, or disability."[7]

USCIS ensures its employees have the knowledge and tools needed to administer the lawful immigration system with professionalism. USCIS provides accessible, reliable, and accurate guidance and information about its public services.  USCIS administers the nation's lawful immigration system, safeguarding its integrity and promise by efficiently and fairly adjudicating requests for immigration benefits while protecting Americans, securing the homeland, and honoring our values.

Consistent with the requirements of the Privacy Act, DHS does not maintain records "describing how any [citizen of the United States or alien lawfully admitted for permanent residence] exercises rights guaranteed by the First Amendment, unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7).  USCIS may collect information pertaining to First Amendment activity based on its authority to administer immigration laws as long as such activity is relevant to the specific immigration request adjudication under consideration.[8]  Furthermore, DHS policy directs that "DHS personnel shall not collect, maintain in DHS systems, or use information protected by the First Amendment unless (a) an individual has expressly granted their consent for DHS to collect, maintain and use that information; (b) maintaining the record is expressly authorized by a federal statute; or (c) that information is relevant to a criminal, civil or administrative activity relating to a law DHS enforces or administers."[9]

---

[7] *CBP Directive No. 51735-013A (Mar. 13, 2012)*
[8] Privacy Act Implementation, Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,965 (July 9, 1975) (hereinafter OMB Guidelines). The Guidelines specifically cite to the Immigration and Nationality Act (INA) as an example of express statutory authorization: "[S]ince the Immigration and Nationality Act makes the possibility of religious or political persecution relevant to a stay of deportation, the information on these subjects may be admitted in evidence, and therefore would not be prohibited by [subsection (e)(7)." OMB Guidelines, at 28,965. Many other INA provisions potentially involve consideration of First Amendment activity. E.g., 8 U.S.C. 1101(a)(43) (definition of refugee, for purpose of refugee and asylum eligibility determinations, includes persecution based on membership in social group, religion, or political opinion); 8 U.S.C. 1182(a)(3)(B) (inadmissibility of any alien who, inter alia, "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization"); 8 U.S.C. 1182(a)(3)(D) (ground of inadmissibility for membership or affiliation with the Communist or other totalitarian party); 8 U.S.C. 1182(a)(3)(F) (ground of inadmissibility for association with terrorist organizations); 8 U.S.C. 1227(a)(4)(B) (deportability of aliens admitted to the United States if described in terrorism-related grounds of inadmissibility); 8 U.S.C. 1424 (prohibition upon the naturalization of persons opposed to government or law, or who favor totalitarian forms of government). DHS/USCIS may also collect this information pursuant to its statutory authority in determining whether the applicant comes under section 313 of the INA's (8 U.S.C. § 1424) prohibition upon the naturalization of persons opposed to government or law, or who favor totalitarian forms of government. Thus, collecting and maintaining this information is lawful both because of express statutory authorization as described above, and because the applicant consented to providing it by signing and filing the application.

[9] *DHS Memorandum, Information Regarding First Amendment Protected Activities, May 17, 2019.*

Responding to the social media field is required for the orderly processing of the DHS forms.[10] For instance, for CBP's ESTA and EVUS forms, the applicant will be unable to submit the online application if they do not provide a response to the mandatory social media field.  Nonetheless, the applicant may proceed if they answer "none" if they do not utilize social media or "other" if their social media platform of choice is not listed.  8 C.F.R. § 103.2(a)(1) provides that forms must be completed in accordance with form instructions. Failure to provide complete and accurate data may either delay or make it impossible for CBP to determine an individual's eligibility to travel to or be admitted to the United States.

For USCIS, an application will not be denied or rejected based solely on the lack of a response; however, USCIS will continue to adjudicate a form where social media information is not answered, but failure to provide the requested data may either delay or make it impossible for USCIS to determine an individual's eligibility for the requested benefit when considering all information in reviewing the application.

Applicants for CBP and USCIS benefits must certify on the respective forms that the information submitted is true and correct to the best of the applicant's knowledge and belief.

DHS will update its forms and systems to collect information, as outlined in this supporting statement, from individuals who seek admission or other benefits when that information is not already collected.  The information to be collected is as follows:

*Electronic Forms:*

The following social media questions will appear on electronic forms:

> Please enter information associated with your online presence over the past five years:

> - Provider/Platform (dropdown bar will provide multiple choices, including "Other", and "None" for those who do not use the platforms listed):
> - Social Media Identifier(s) over the past five years (free text field for applicant to enter information):

The forms will allow the applicant to provide as many platforms and identifiers as necessary.

*Paper Forms:*

Please enter information associated with your online presence over the past five years:

> Provider/Platform:  (a list will be provided including "Other", and "None" for those who do not use the platforms listed)_____

---

[10] Pursuant to 5 C.F.R. § 1320.8(b)(3)(iv), agencies are required to "inform[] and provide reasonable notice to the potential persons to whom the collection of information is addressed of— Whether responses to the collection of information are voluntary, required to obtain or retain a benefit [], or mandatory []" pursuant to the authorities cited herein.

Social Media Identifier(s):  _____

A sufficient amount of space on the paper form will be provided to allow the applicant appropriate room to provide all necessary platforms/identifiers.

The request for social media platforms, providers, and websites will focus on those fora that the individual uses to collaborate, share information and interact with others.[11]  The platforms listed may be updated by the Department by adding or removing platforms, consistent with the uses described in this supporting statement.

*CBP Authorities:*

CBP has the following statutory and regulatory authorities, as an agency of the U.S. Government, to collect social media information from applicants seeking to travel to or be admitted to the United States:

- CBP is responsible for preventing the entry of terrorists and instruments of terrorism into the United States, securing the borders, and enforcing the immigration laws.[12]  To exercise its authority with respect to both inbound and outbound border crossings of U.S. citizens and aliens alike, CBP gathers information about individuals who may seek entry into the United States.  CBP's authorities empower it to gather information, including information found via social media, which is relevant to its immigration and law enforcement missions.[13]  For example, under the Immigration and Nationality Act (INA), as amended, and implementing regulations, CBP Officers, Border Patrol Agents, and other immigration officers have authority to, among other things, "take and consider evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States; or concerning any matter which is material or relevant to the enforcement of the [INA] and the administration of the immigration and naturalization functions of the Department."[14]
- Under this broad authority to take and consider "evidence," CBP may use information obtained from social media where relevant to the laws it enforces and administers, including its immigration enforcement mission under Title 8 of the U.S. Code.

In addition, CBP has the following statutory and regulatory authorities to collect additional biographic data pertaining to social media, on the following forms:[15]

- **Electronic System for Travel Authorization (ESTA):** Collection of data through this form is authorized by Section 711 of The Secure Travel and Counterterrorism Partnership

---

[11] Non-social media websites, such as those for applicants to carry out financial transactions, medical appointment and records, homeowner's associations, travel, and tourism are not germane to this information collection.

[12] *See* Homeland Security Act § 402 (6 U.S.C. § 202), and 6 U.S.C. § 211.

[13] *See, e.g.*, 8 U.S.C. §§ 1182, 1187, 1225, 1357(b).

[14] 8 C.F.R. § 287.5(a)(2); *see also* 8 U.S.C. § 1357(b).  CBP Officers have the responsibility to elicit sufficient information to determine whether an applicant is admissible.  If an applicant refuses to answer sufficiently for the Officer to find the individual admissible, the individual will be inadmissible.

[15] The ESTA, I-94W, and EVUS forms require certification from the applicant that the answers and information provided are true and correct to the best of the knowledge and belief of the applicant.

Act of 2007 (part of the Implementing Recommendations of the 9/11 Commission Act of 2007, also known as the "9/11 Act," Public Law 110-53).  The authorities for the maintenance of this system are found in: Title IV of the Homeland Security Act of 2002, 6 U.S.C. § 201 *et seq.*, the INA, as amended, including 8 U.S.C. § 1187(a)(11) and (h)(3), and implementing regulations contained in 8 C.F.R. § 217,  and the Travel Promotion Act of 2009, Public Law 111-145 (22 U.S.C. § 2131).

- **I-94W Nonimmigrant Visa Waiver Arrival/Departure Record**:  Collection of data through this form is authorized by 8 U.S.C. §§ 1103 and 1187 and 8 C.F.R. §§ 235.1, 264.1-.6, and 1235.1.

- **Electronic Visa Update System (EVUS):** Collection of data through this form is authorized by INA § 104(a), 8 U.S.C. § 1104(a).  The authorities for the maintenance of this system are found in: Title IV of the Homeland Security Act of 2002, 6 U.S.C. § 201 *et seq.*, the INA, as amended, including §§ 103 (8 U.S.C. § 1103), 214 (8 U.S.C. § 1184), 215 (8 U.S.C. § 1185), and 221 (8 U.S.C. § 1201); the Travel Promotion Act of 2009, Public Law 111-145 (22 U.S.C. § 2131); and 8 C.F.R. §§ 2, 212, 214, 215, and 273.

*USCIS Authorities:*

Although the Immigration and Nationality Act (INA) does not mention social media specifically, USCIS personnel are authorized to use social media under the following general legal authorities provided in the INA:

- 8 U.S.C. § 1103(a)  Powers and duties of the Secretary.  Includes among other provisions the authority for the Secretary of Homeland Security to establish regulations, issue instructions and "perform such other acts as he deems necessary" to carry out his authority under the INA.[16]

- 8 U.S.C § 1357(a)(1) and (b),  Powers without a warrant, which empowers immigration officers, as designated by the Secretary of Homeland Security, to "interrogate any alien or person believed to be an alien as to his right to be or remain in the United States" and "to administer oaths and to take and consider evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States, or concerning any matter which is material or relevant to the enforcement of [the INA] and the administration of" the immigration and naturalization functions of the Department of Homeland Security.[17]

The following USCIS regulations and instructions in benefit request forms permit USCIS to use social media to perform its vetting mission:

- 8 C.F.R §§ 204.5(m)(12) and 214.2(r)(16) provide that, in the context of adjudicating an immigrant or nonimmigrant religious worker petition, USCIS may verify the supporting evidence submitted by the petitioner "through any means determined appropriate by

---

[16] Note that a number of regulations, including 8 C.F.R. parts 103 and 208, provide additional detail on processing and adjudication of benefit requests.

[17] *See also* 8 C.F.R. § 287.5.

USCIS," including by "review of any other records that the USCIS considers pertinent to the integrity of the organization" with which the religious worker is affiliated.

- 8 C.F.R. § 103.2(a)(1) requires that every benefit request be executed and filed in accordance with the form instructions and clarifies that "such instructions are incorporated into the regulations requiring its submission." DHS has incorporated specific language in the instructions for a majority of immigration forms stating that the Department may verify information for immigration benefits through a number of methods, including, but not limited to, the review of public records and information, including publicly available information from Internet sources. The section, entitled "USCIS Compliance Review and Monitoring," provides as follows:

  o By signing this application, you have stated under penalty of perjury (28 U.S.C. section 1746) that all information and documentation submitted with this application is complete, true, and correct. You also authorize the release of any information from your records that USCIS may need to determine your eligibility for the immigration benefit you are seeking and consent to USCIS verifying such information.[18]

  o The Department of Homeland Security (DHS) has the authority to verify any information you submit to establish eligibility for the immigration benefit you are seeking at any time. USCIS' legal authority to verify this information is in 8 U.S.C. sections 1103, 1155, and 1184; and 8 CFR Parts 103, 204, 205, 214, 316, and 336.[19] To ensure compliance with applicable laws and authorities, USCIS may verify information before or after your case is decided.

  o Agency verification methods may include, but are not limited to, review of public records and information; contact via written correspondence, the Internet, facsimile, other electronic transmission, or telephone; unannounced physical site inspections of residences and locations of employment; and interviews. USCIS will use information obtained through verification to assess your compliance with the laws and to determine your eligibility for an immigration benefit.

  o Subject to the restrictions under 8 CFR 103.2(b)(16), USCIS will provide you with an opportunity to address any adverse or derogatory information that may result from a USCIS compliance review, verification, or site visit after a formal decision is made on your case or after the agency has initiated an adverse action which may result in revocation or termination of an approval.

---

[18] USCIS will modify the Applicant's Certification section on the applicable USCIS forms and petitions to include the following text: "I also authorize USCIS to use publicly available social media information for verification purposes and to determine my eligibility for the immigration benefit that I seek. I further understand that USCIS is not requiring me to provide passwords; to log into a private account; or to take any action that would disclose non-publicly available social media information."

[19] The specific statutory authorities provided in each USCIS form may differ based on the authority for the program for which the form is used.

Following are the currently approved information collection packages on which DHS plans to add the date elements using this generic approval package to collect data pertaining to social media and their applicable statutory and regulatory authorities:

- **N-400, Application for Naturalization:** Collection of data through this form is authorized by INA § 103, 8 U.S.C. § 1103; INA § 337, 8 U.S.C. § 1448; INA § 310, 8 U.S.C. § 1421; 8 C.F.R. § 316.4 and 8 C.F.R. § 316.10.
- **I-131, Application for Travel Document:** Collection of data through this form is authorized by INA §§ 103, 208, 212, 223 and 244, 8 U.S.C. §§ 1103, 1158, 1182, 1203 and 1204; 8 C.F.R. § 208.6; 8 C.F.R. § 244.16.
- **I-192, Application for Advance Permission to Enter as a Nonimmigrant:** Collection of data through this form is authorized by INA § 212, 8 U.S.C. § 1182.
- **I-485, Application to Register Permanent Residence or Adjust status:** Collection of data through this form is authorized by INA § 245 and 8 C.F.R. 245.1 et seq.; INA § 245A and 8 C.F.R. 245(a).1 *et seq*.; INA § 209 and 8 C.F.R. 209.1 *et seq*.; Section 1059 of Public Law 109-163, as amended by Public Law 110-36; Section 1244 of Public Law 110-181, as amended by section 602(b)(9) of Public Law 111-8; Section 602(b) of Public Law 111-8; INA § 249 and 8 C.F.R. § 249.1 et seq; INA §§ 291, 204(b), 204(e), 212(a)(5)(A), 212(a)(4), 204(j); Section 902 of Public Law 105-277 (HRIFA) .
- **I-589, Application for Asylum and for Withholding of Removal:** Collection of data through this form is authorized by INA §§ 101(a)(42), 208(a) and (b), and 241(b)(3); 8 U.S.C. §§ 1101(a)(42), 1158(a) 1231(b)(3), 8 C.F.R. §§ 208.6, 208.16, 208.17, 208.18, 1208.6, 1208.16, 1208.17, and 1208.18.
- **I-590, Registration for Classification as Refugee:** This information collection is authorized by INA § 101(a)(42), 8 U.S.C. 1101(a)(42); INA § 207, 8 U.S.C. § 1157.
- **I-730, Refugee/Asylee Relative Petition:** This information collection is authorized by INA §§ 207(c)(2), and 208(c), 8 U.S.C. 1157 and 1158.
- **I-751, Petition to Remove Conditions on Residence:** Collection of data through this form is authorized by INA § 216, 8 U.S.C. 1186(a); 8 CFR Part 216.
- **I-829, Petition by Investor to Remove Conditions on Permanent Resident Status:** Collection of data through this form is authorized by INA §§ 203(b)(5), 216(a), 8 U.S.C. §§ 1153, 1186(b).

*DHS Authorities and Privacy Policies:*

DHS has additional statutory and regulatory authorities to secure the homeland and prevent terrorism, in addition to those cited above for CBP and USCIS. These include:
- The Homeland Security Act of 2002, Pub. Law No. 107-296, 116 Stat. 2135;
- The Intelligence Reform and Terrorism Prevention Act of 2004, P.L. 108-458;
- Implementing Recommendations of the 9/11 Commission Act of 2007 ("The 9/11 Act"), P.L. 110-53;
- The Immigration and Nationality Act, as amended.

DHS will collect this information for identity verification, national security screening, vetting, inspection, and law enforcement purposes. Questions included on certain DHS application

forms, petitions, and intake systems are incorporated to ensure national security screening and vetting, consistent with Executive Order 13780, to the extent they are relevant to the alien's admissibility to the United States or eligibility for the immigration benefit requested.  DHS does not intend to use social media information to reject or deny a request unless the information relates to either the codified statutory and regulatory eligibility requirements for the particular benefit or the authority to deny based on discretion.

DHS is committed to protecting individuals' First Amendment rights, regardless of the medium of their communications.  These principles apply to social media.  As explained above, DHS has clear guidance in place regarding the appropriate handling and treatment of information about First Amendment protected activities.  Information that is protected by the First Amendment may be considered when it could reasonably give rise to legitimate concerns relating to, for example, fraud, national security, public safety, benefits integrity, eligibility for benefits, and/or grounds of inadmissibility.  This type of information will be collected only if it is relevant to a law enforcement activity under the circumstances, or where expressly authorized through consent or by a federal statute and for no other reason.

DHS also adheres to other constitutional principles when using social media in furtherance of its mission.  For example, under general Fourth Amendment principles, "[w]hat a person knowingly exposes to the public… is not a subject of Fourth Amendment protection."[20]

In addition to the DHS component-specific authorities previously cited, DHS components must also adhere to DHS Directive 110-01, "Privacy Policy for Operational Use of Social Media," and DHS Instruction 110-01-001, "Privacy Policy for Operational Use of Social Media," which define the authorized use of social media to collect personally identifiable information for the purpose of enhancing situational awareness, investigating an individual in a criminal, civil, or administrative context, making a benefit determination about a person, making a personnel determination about a Department employee, making a suitability determination about a prospective Department employee, or for any other official Department purpose that has the potential to affect the rights, privileges, or benefits of an individual.

This policy also requires DHS Operational Components to receive approval from the DHS Privacy Office regarding the privacy implications of any planned operational use of social media to ensure that it is compliant with Departmental privacy policies and standards.[21]  DHS employees, who are permitted and trained to utilize social media for operational purposes during the performance of their duties, must adhere to DHS privacy policies, as established by the Chief Privacy Officer.

DHS maintains a framework of safeguards, training, and policies for use of social media in vetting programs and to ensure preservation of privacy, civil rights, and civil liberties.  When

---

[20] *California v. Greenwood*, 486 U.S. 35, 41 (1988).

[21] DHS authorities for the "Privacy Policy for Operational Use of Social Media" are as follows:  Public Law 107-347, "E-Government Act of 2002" as amended, Section 208, codified at 44 U.S.C. § 3501 note; 5 U.S.C. § 552a, Records Maintained on Individuals, (The Privacy Act of 1974, as amended);  6 U.S.C. § 142, Privacy Officer; 44 U.S.C., Chapter 35, Subchapter III, "Information Security" (The Federal Information Security Management Act of 2002, as amended); Delegation 13001, "Delegation to the Chief Privacy Officer."

adjudicating eligibility to travel to or be admitted to the United States and immigration benefits, the use of social media is governed by strict privacy provisions, use limitations, and in adherence with all constitutionally protected rights and freedoms.[22]  DHS Oversight Offices, including the Office of the General Counsel, the Privacy Office, and the Office for Civil Rights and Civil Liberties, each review aspects of DHS policies regarding the use of social media information.  They regularly advise programs on best practices and methods for ensuring legal and policy compliance.  In addition, the Privacy Office reviews and must approve guidelines customized to each program's specific operational use of social media before implementation.

2.  **Purpose and Use of the Information Collection**

*Data Use by DHS*
When adjudicating eligibility to travel to or be admitted to the United States and immigration-related benefits, DHS officers and analysts examine the totality of information available to them before granting or denying the application or benefit.  DHS considers the requested information – social media platforms used and associated handles – to be biographic data, which, in general, would not be used as the sole basis for the denial or granting of any application or benefit, with the exception of certain USCIS discretionary overseas adjudications.

Information used to adjudicate eligibility to travel to or be admitted to the United States and immigration benefits includes, but is not limited to, searches of national security, law enforcement, and immigration information (both internal and external to DHS); interviews, when appropriate; and collaboration with other federal offices and agencies investigating or otherwise interested in the applicant.  Social media information will be used as an additional source of information during these adjudications, to confirm identity, corroborate information provided by the applicant, and address any issues related to the application or petition for a DHS benefit.

Social media information may be shared with other agencies which have a need to know the information to carry out their national security, law enforcement, immigration, or other homeland security functions.  Information sharing with agencies outside DHS will abide by information sharing agreements between the agencies and DHS and be consistent with applicable statutory and regulatory requirements.  Information sharing will also be conducted consistent with applicable System of Records Notices and routine uses.

No DHS application, benefit, or petition is guaranteed approval, and it can be denied for a variety of reasons; however, an applicant who does not have a social media presence will not be denied solely on that basis.  Nevertheless, if an applicant willfully misrepresents information, or does not provide sufficient information for proper adjudication of the relevant request, it may delay or make it impossible for DHS to determine an individual's eligibility when considering the totality of the application information.

---

[22] All access controls described in relevant Privacy Impact Assessments and System of Records Notices are available to the public on the DHS website (www.dhs.gov/privacy).

For the purposes of this collection, USCIS and CBP will not use social media handle information to communicate with the applicant,[23] and will only evaluate publicly available social media information.

*Submission of Intentionally Inaccurate Data by Applicant*

Any alien who, by fraud or willfully misrepresenting a material fact, seeks an immigration benefit or admission into the United States is inadmissible.[24]  For a person to be inadmissible based on willful misrepresentation, the officer must find all of the following elements:

•The person procured, or sought to procure, a benefit under U.S. immigration laws;
•The person made a false representation;
•The false representation was willfully made;
•The false representation was material; and
•The false representation was made to a U.S. government official, generally an immigration or consular officer.[25]

If the person succeeded in obtaining the benefit under the INA, he or she would be inadmissible for having procured the benefit by willful misrepresentation.  If the attempt was not successful, then the person would still be inadmissible for having "sought to procure" the immigration benefit by willful misrepresentation.[26]

The DHS forms and petitions cited in this supporting statement will each have an applicant's certification section, whereby the applicant or petitioner will certify that the answers and information provided are true and correct.  It is incumbent upon the applicant or petitioner to respond truthfully.  If, in the course of DHS's screening and vetting of an application, DHS finds that provided data is false or misleading, DHS will determine appropriate action, based on its authorities.

DHS will only submit a collection for approval under this generic clearance for the following forms:

*CBP Forms*:

• OMB No. 1651-0111 – Electronic System for Travel Authorization (ESTA)
• OMB No. 1651-0111 – Nonimmigrant Visa Waiver Arrival/Departure Record (I-94W)
• OMB No. 1651-0139 – Electronic Visa Update System (EVUS)

*USCIS Forms*:

• OMB No. 1615-0052 – N-400 Application for Naturalization

---

[23] Supporting Statement Arrival and Departure Record Forms I-94, I-94W and Electronic System for Travel Authorization-ESTA OMB No. 1651-0111, page 6.
[24] See INA 212(a)(6)(C)(i). For a definition of materiality, see Chapter 3, Adjudicating Inadmissibility, Section E, and Materiality [8 USCIS-PM J.3 (E)].
[25] See *Matter of Y-G-*, 20 I&N Dec. 794, 796 (BIA 1994) and USCIS Policy Manual, current as of May 23, 2018, Volume 8, Admissibility, part J, Fraud and Willful Misrepresentation.
[26] For example, the misrepresentation was detected and the benefit was denied.

- OMB No. 1615-0013 – I-131 Application for Travel Document
- OMB No. 1615-0017 – I-192 Application for Advance Permission to Enter as a Nonimmigrant
- OMB No. 1615-0023 – I-485 Application to Register Permanent Residence or Adjust Status
- OMB No. 1615-0067 – I-589 Application for Asylum and for Withholding of Removal
- OMB No. 1615-0068 – I-590 Registration for Classification as a Refugee
- OMB No. 1615-0037 – I-730 Refugee/Asylee Relative Petition
- OMB No. 1615-0038 – I-751 Petition to Remove Conditions on Residence
- OMB No. 1615-0045 – I-829 Petition by Investor to Remove Conditions on Permanent Resident Status

If these conditions are not met, DHS will submit an information collection request to OMB for approval through the normal PRA process.

To obtain approval for a collection that meets the conditions of this generic clearance, a standardized form will be submitted to OMB along with supporting documentation (e.g., a copy of the updated application or petition form). Approval will only be granted if the agency demonstrates the collection of information complies with the specific circumstances laid out in this supporting statement.

For the purposes of this request, DHS has determined that the Department shall elicit social media information from applicants seeking to travel to or be admitted to the United States or immigration benefits through the following instructions:

*Electronic Forms:*

The following social media questions will appear as follows on electronic forms:

Please enter information associated with your on-line presence over the past five years:

- Provider/Platform (dropdown bar will provide multiple choices including "Other" and "None" for those who do not use the platforms listed):
- Social Media Identifier(s) over the past five years (free text field for applicant to enter information):

The forms will allow the applicant to provide as many platforms and identifiers as necessary.

*Paper Forms:*

Please enter information associated with your on-line presence over the past five years:

Provider/Platform:  (a list will be provided including "Other" or "None" for those who do not use the platforms listed)_____
Social Media Identifier(s):  _____

A sufficient amount of space on the paper form will be provided to allow the applicant appropriate room to provide all necessary platforms/identifiers.

The platforms listed may be updated by the Department by adding or removing platforms, consistent with the uses described in this supporting statement.

## 3. Consideration Given to Information Technology

Where appropriate, DHS electronically collects and processes information from an applicant as required by policy and existing law.

USCIS is currently engaged in an agency-wide effort to move the processing of immigration benefits, petitions, and applications from a paper-based to an electronic environment, accessible to both USCIS employees and applicants for benefits.

*CBP Forms:*

- OMB No. 1651-0111 – Electronic System for Travel Authorization (ESTA): This form is only available in electronic format.
- OMB No. 1651-0111 – Nonimmigrant Visa Waiver Arrival/Departure Record (I-94W): This form is only available in paper format. It is a paper form used in lieu of an ESTA when applying for admission at a land border, or on specific occasions at other ports of entry, without immediate access to the electronic format above.
- OMB No. 1651-0139 – Electronic Visa Update System (EVUS): This form is only available in electronic format.

*USCIS Forms:*

- OMB No. 1615-0052 – N-400 Application for Naturalization: This form may be filed electronically or in paper format.
- OMB No. 1615-0013 – I-131 Application for Travel Document: This form is only available in paper format.
- OMB No. 1615-0017 – I-192 Application for Advance Permission to Enter as a Nonimmigrant: This form may be filed electronically or in paper format.
- OMB No. 1615-0023 – I-485 Application to Register Permanent Residence or Adjust Status: This form is only available in paper format.
- OMB No. 1615-0067 – I-589 Application for Asylum and for Withholding of Removal: This form is only available in paper format.[27]
- OMB No. 1615-0068 – I-590 Registration for Classification as a Refugee: This form is only available in paper format.
- OMB No. 1615-0037 – I-730 Refugee/Asylee Relative Petition: This form is only available in paper format.
- OMB No. 1615-0038 – I-751 Petition to Remove Conditions on Residence: This form is only available in paper format.

---

[27] Electronic filing of the I-589 is tentatively scheduled to be available in mid to late 2020.

- OMB No. 1615-0045 – I-829 Petition by Investor to Remove Conditions on Permanent Resident Status:  This form is only available in paper format.

## 4.   Duplication of Information

The Department seeks to expand, according to its authorities and through the collection of social media information, current screening and vetting procedures performed on applicants seeking to travel to or be admitted to the United States or applying for specific immigration benefits.  The new information collection submitted for approval under this information collection request is not already widely collected, available and shared among Federal border control, immigration benefit, enforcement, and law enforcement agencies, and is necessary to determine if the alien is eligible to travel to or enter the United States or receive an immigration benefit.

The data to be obtained via this collection of information will support the agency's decision-making for the submitted form.  The data elements such as the social media handle may be collected from the respondent on multiple forms across different agencies over the course of months or years apart.  The need for the question to be repeated on the impacted forms is because the use of the social media between form submissions can result in new data to be reviewed.  Asking these questions on multiple forms will ensure that the agency is able to properly review and make a decision based on the most recent information.

The Department recognizes that some of the forms included in this submission are used by a small number of applicants who may then apply for a visa from the Department of State.  However, these forms are also used by certain travelers who would not be required to complete the consular process.  As such, they are included with this submission to ensure that the Department is able to effectively standardize its data collection activities.

## 5.   Reducing the Burden on Small Businesses or Other Small Entities

The Department has undertaken efforts to increase the availability of electronic forms to reduce the burden on the public.  A selection of immigration and foreign traveler forms collecting this information are fully electronic and available online.  DHS seeks to allow for the collection of data electronically to the extent feasible, to reduce the burden on the public and create greater efficiencies.

*CBP Forms:*

None of the forms that are the subject of this information collection are filed by small businesses or entities.

- OMB No. 1651-0111 – Electronic System for Travel Authorization (ESTA):  This form is only available in electronic format.
- OMB No. 1651-0111 – Nonimmigrant Visa Waiver Arrival/Departure Record (I-94W):  This form is only available in paper format.  It is a paper form used in lieu of an ESTA when applying for admission at a land border, or on specific occasions at other ports of entry, without immediate access to the electronic format above.

- OMB No. 1651-0139 – Electronic Visa Update System (EVUS):  This form is only available in electronic format.

*USCIS Forms:*

- OMB No. 1615-0052 – N-400 Application for Naturalization
- OMB No. 1615-0013 – I-131 Application for Travel Document
- OMB No. 1615-0017 – I-192 Application for Advance Permission to Enter as a Nonimmigrant
- OMB No. 1615-0023 – I-485 Application to Register Permanent Residence or Adjust Status
- OMB No. 1615-0067 – I-589 Application for Asylum and for Withholding of Removal
- OMB No. 1615-0068 – I-590 Registration for Classification as a Refugee
- OMB No. 1615-0037 – I-730 Refugee/Asylee Relative Petition
- OMB No. 1615-0038 – I-751 Petition to Remove Conditions on Residence
- OMB No. 1615-0045 – I-829 Petition by Investor to Remove Conditions on Permanent Resident Status

## 6. Consequences of Not Conducting Collection or Collecting Less Frequently

Not collecting the information requested could compromise the integrity and sufficiency of the DHS determination of the alien's eligibility to travel to or be admitted to the United States or to receive an immigration benefit from DHS.

## 7. Special Circumstances

There are no special circumstances.

## 8. Consultations with Persons Outside the Agency

In accordance with 5 C.F.R. § 1320.8(d), a notice requesting public comments for 60 days was published in the *Federal Register* on September 4, 2019, at 84 FR 46557 and a subsequent notice requesting public comments for 30 days was published on February 10, 2020 at 85 FR 7573.  A summary of the public comments received and the DHS response is attached to this supporting statement.

## 9. Payment or Gift

There are no payments or gifts provided to the respondents for providing this information.

## 10. Confidentiality

All data submitted under this collection will be handled in accordance with applicable U.S. laws and DHS policies regarding personally identifiable information[28].

- Public Law 107-347, "E-Government Act of 2002," as amended, Section 208 [44 U.S.C. § 3501 note].
- Title 5, United States Code (U.S.C.), Section 552a, "Records maintained on individuals" [The Privacy Act of 1974, as amended].
- Title 6, U.S.C., Section 142, "Privacy officer."
- Title 44, U.S.C., Chapter 35, Subchapter II, "Information Security" [The Federal Information Security Modernization Act of 2014 (FISMA)].
- DHS Directive 047-01, "Privacy Policy and Compliance" (July 25, 2011).
- DHS Instruction 047-01-001, "Privacy Policy and Compliance" (July 25, 2011).
- Privacy Policy Guidance Memorandum 2008-01/Privacy Policy Directive 140-06, "The Fair Information Practice Principles: Framework for Privacy Policy at the Department of Homeland Security." (December 29, 2008).
- Privacy Policy Guidance Memorandum 2017-01, DHS Privacy Policy Regarding Collection, Use, Retention, and Dissemination of Personally Identifiable Information. (April 25, 2017).
- Refugees, asylees, information contained in or pertaining to any asylum or protection application, or records pertaining to any credible or reasonable fear determination are protected by the confidentiality provisions of 8 C.F.R. § 208.6
- Aliens in TPS status have the confidentiality protections described in 8 CFR 244.16; 8 U.S.C. § 1254a(c)(6).
- Aliens who have applied for relief under VAWA, or U or T visas have the confidentiality protections described in 8 U.S.C. Section 1367.
- Aliens for who have applied for legalization and LIFE Act legalization have the confidentiality protections described in INA §§245A(c)(4),(5).
- The system of record notices associated with this information collection are:
  - DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, September 18, 2017, 82 FR 43556 (all USCIS forms).
  - DHS/USCIS-007 Benefits Information System, October 19, 2016, 81 FR 72069 (Forms N-400, I-131, I-192, I-485, I-751, I-829).
  - DHS/USCIS-010 Asylum Information and Pre-Screening System of Records November 30, 2015, 80 FR 74781 (Form I-589, Form I-730).
  - DHS/USCIS-017 Refugee Case Processing and Security Screening Information System of Records October 19, 2016, 81 FR 72075 (Form I-590 and I-730)
  - DHS/USCIS-018 Immigration Biometric and Background Check (IBBC) System of Records, July 31, 2018, 83 FR 36950 (All forms).
  - DHS/CBP-006 Automated Targeting System, May 22, 2012, 77 FR 30297 (Form I-192).
  - DHS/CBP-011 U.S. Customs and Border Protection TECS December 19, 2008, 73 FR 77778 (Form I-192).

---

[28] 8 U.S.C. § 1367 provides confidentiality protection to aliens who have filed petitions or applications for VAWA benefits or U or T visas. INA §§245A(c)(4), (5) provide confidentiality protections to aliens for who have applied for legalization and LIFE Act legalization.

- o
- o DHS/CBP-022 Electronic Visa Update System (EVUS) System of Records, September 1, 2016, 81 FR 60371 (EVUS Form); Final Rule for Privacy Exemptions, November 25, 2016, 81 FR 85105.
- o DHS/CBP-009 Electronic System for Travel Authorization (ESTA), September 2, 2016, 81 FR 60713 (ESTA Form); Final Rule for Privacy Act Exemptions, August 31, 2009 74 FR 45069.
- o DHS/CBP-016 Nonimmigrant Information System March 13, 2015, 80 FR 13398 (Form I-94W).

**Applicable USCIS Privacy Impact Assessments (PIA):**
- o *DHS/USCIS/PIA-068 Refugee Case Processing and Security Vetting:* https://www.dhs.gov/publication/dhsuscispia-068-refugee-case-processing-and-security-vetting *(July 21, 2017)*
- o *DHS/USCIS/PIA-016 Computer Linked Application Information Management System (CLAIMS 3)* https://www.dhs.gov/publication/dhsuscispia-016-computer-linked-application-information-management-system-claims-3-and *(May 7, 2019)*
- o *DHS/USCIS/PIA-056 USCIS Electronic Information System (ELIS):* https://www.dhs.gov/publication/dhsuscispia-056-uscis-electronic-immigration-system-uscis-elis *(December 3, 2018)*
- o *DHS-USCIS-PIA-051 Case and Activity Management for International Operations (CAMINO):* https://www.dhs.gov/publication/dhs-uscis-pia-051-case-and-activity-management-international-operations-camino  *(May 26, 2015)*
- o *DHS/USCIS/PIA-027(c) Asylum Division:* https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-asylum-july2017_0.pdf *(July 21, 2017)*
- o *DHS/USCIS/PIA-013-01 Fraud Detection and National Security Directorate compliance related documents (*July 26, 1019) https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-013-01-fdns-july2019_0.pdf

**Applicable CBP Privacy Impact Assessments (PIA):**

- o *DHS/ CBP/PIA-007 Electronic System for Travel Authorization (ESTA)* https://www.dhs.gov/publication/electronic-system-travel-authorization
- o *DHS/CBP/PIA-033 Electronic Visa Update System (EVUS)* https://www.dhs.gov/publication/dhscbppia-033-electronic-visa-update-system-evus
- o *DHS//CBP/PIA-006 Automated Targeting System (ATS)* https://www.dhs.gov/publication/automated-targeting-system-ats-update
- o *DHS/CBP/PIA-016 I-94 Website Application* https://www.dhs.gov/publication/us-customs-and-border-protection-form-i-94-automation
- o *DHS/CBP/PIA-057(a) Electronic Secured Adjudication Forms Environment (e-SAFE):* https://www.dhs.gov/publication/dhscbppia-057-electronic-secured-adjudication-forms-environment-e-safe

## 11. Sensitive Nature

There are no questions of a sensitive nature included in this generic clearance request.

## 12. Burden of Information Collection

A variety of instruments and platforms will be used to collect information from respondents. The annual burden hours requested are based on the number of collections we expect to conduct over the requested period for this clearance.

| Type of Respondent | Form Name / Form Number | A<br>#. of Respondents | B<br>#. of Responses per Respondent | C (=AxB)<br># of Responses | D<br>Avg. Burden per Response (in hours) | E (=CxD)<br>Total Annual Burden (in hours) | F<br>Avg. Hourly Wage Rate* | (=ExF)<br>Total Annual Respondent Cost |
|---|---|---|---|---|---|---|---|---|
| Individuals or households | Electronic System for Travel Authorization (ESTA): | 23,010,000 | 1 | 23,010,000 | 0.083 | 1,909,830 | $33.40 | $63,788,322 |
| Individuals or households | I-94W Nonimmigrant Visa Waiver Arrival/Departure Record | 941,291 | 1 | 941,291 | 0.083 | 78,127 | $33.40 | $2,609,447 |
| Individuals or households | Electronic Visa Update System (EVUS): | 3,595,904 | 1 | 3,595,904 | 0.083 | 298,460 | $33.40 | $9,968,565 |
| Individuals or households | N-400 Application for Naturalization: | 830,673 | 1 | 830,673 | 0.083 | 68,946 | $33.40 | $2,302,792 |
| Individuals or households | I-131: Application for travel document: | 483,920 | 1 | 483,920 | 0.083 | 40,165 | $33.40 | $1,341,523 |
| Individuals or households | I-192 Application for advance permission to enter as a nonimmigrant: | 68,050 | 1 | 68,050 | 0.083 | 5,648 | $33.40 | $188,648 |
| Individuals or households | I-485 Application to register permanent residence or adjust status | 652,599 | 1 | 652,599 | 0.083 | 54,166 | $33.40 | $1,809,135 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Individuals or households | I-589 Application for asylum and for withholding of removal | 157,372 | 1 | 157,372 | 0.083 | 13,062 | $33.40 | $436,267 |
| Individuals or households | I-590, Registration for Classification as Refugee | 50,000 | 1 | 50,000 | 0.083 | 4,150 | $33.40 | $138,610 |
| Individuals or households | I-730, Refugee /Asylee Relative Petition | 6,039 | 1 | 6,039 | 0.083 | 501 | $33.40 | $16,741 |
| Individuals or households | I-751 Petition to Remove Conditions on Residence | 159,119 | 1 | 159,119 | 0.083 | 13,207 | $33.40 | $441,110 |
| Individuals or households | I-829 Petition by Investor to Remove Conditions on Permanent Resident Status | 3,859 | 1 | 3,859 | 0.083 | 320 | $33.40 | $10,698 |
| Total | | | | 29,958,826 | | 2,486,583 | | $83,051,857 |

*The above Average Hourly Wage Rate is the May 2016 Bureau of Labor Statistics average wage for All Occupations [or Insert Other Category from BLS Table] of $23.86 times the wage rate benefit multiplier of 1.4 (to account for benefits provided) equaling $33.40. The selection of "All Occupations" was chosen as the expected respondents for this collection could be expected to be from any occupation.*

*The Average Burden per Response for each form reflects an aggregate of the estimated time burden pre-response for each question being added to the form. Some forms contain one or more of the questions contained in the Generic Clearance, so the total amount listed for each form reflects only that additional burden.*

**13. Costs to Respondents**

No additional costs to the public are anticipated.

**14. Costs to Federal Government**

These costs will be captured in the specific forms under the OMB Control Numbers identified above. Its costs will be accounted for depending on the number of questions added to each form and the system changes that are required to capture that data. We have no estimate for the aggregate costs for system updates for all of the subject forms.

**15. Reason for Change**

This is a new generic clearance.  This request is being submitted for review and approval to fulfill the requirements of EO 13780 (Section 5) to establish a uniform baseline of screening and vetting standards and procedures in order to enhance DHS's ability to assess an alien's eligibility to travel to, be admitted to, or receive an immigration-related benefit from DHS.  This data collection also is used to validate an applicant's identity information and to determine whether such travel, entry to the United States, or grant of a benefit poses a law enforcement or national security risk to the United States.

**16. Tabulation of Results, Schedule, Analysis Plans**

DHS does not intend to employ the use of statistics or the publication thereof for this information collection.

**17. Display of OMB Approval Date**

We are requesting no exemption.

**18. Exceptions to Certification for Paperwork Reduction Act Submissions**

These activities comply with the requirements in 5 CFR § 1320.9.